**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Tineshia Barlow*

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TINESHIA BARLOW,

               Plaintiff,

     v.

ALLENBERRY RESORT, ALLENBERRY
RESORT AND LODGING, LLC, MOWERY
FISHER, MIDWAY BOWL, LLC, DANIEL
MOWERY, KATIE KENNEDY, MIKE
KENNEDY, and JEROMY KIMPLE,

               Defendants.

Civil Action No._____

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF *and* DAMAGES**

JURY TRIAL DEMANDED

## Nature of the Action

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981).

2. Plaintiff seeks actual damages, compensatory damages, punitive damages, statutory penalties, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of her rights.

## Parties

3. Plaintiff Tineshia Barlow ("Ms. Barlow") is an adult individual resident of Cumberland County and a citizen of the Commonwealth of Pennsylvania.

4. Defendant Allenberry Resort is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 1559 Boiling Springs Road, Boiling Springs, PA 17007. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment.

5. Defendant Allenberry Resort and Lodging, LLC is a limited liability company incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 1559 Boiling Springs Road, Boiling Springs, PA 17007. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment.

6. Defendant Mowery Fisher is a fictitious business entity incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 1561 Holly Pike, Carlisle, PA 17015. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment.

7. Defendant Midway Bowl LLC is a limited liability company incorporated in the Commonwealth of Pennsylvania with a principal place of business located at 1561 Holly Pike, Carlisle, PA 17015. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment.

8.  Defendant Daniel Mowery is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in Cumberland County located at 1561 Holly Pike, Carlisle, PA 17015.

9.  Defendant Katie Kennedy is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in Cumberland County located at 1559 Boiling Springs Road, Boiling Springs, PA 17007.

10. Defendant Mike Kennedy is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in Cumberland County located at 1559 Boiling Springs Road, Boiling Springs, PA 17007.

11. At all relevant times, Defendants Allenberry Resort, Allenberry Resort and Lodging, LLC, Katie Kennedy, Mike Kennedy, LLC, Mowery Fisher, Midway Bowl LLC, and Daniel Mowery owned, operated, controlled, and maintained the Allenberry resort and community located in Boiling Springs, PA (hereafter referred to as "Allenberry Resort").

12. At all relevant times, Defendants Allenberry Resort, Allenberry Resort and Lodging, LLC, Mowery Fisher, and Midway Bowl LLC were joint employers of Plaintiff who at all relevant times exercised joint control and dominion over the location of the work, discretion over the duration of the relationship between the parties, power of hiring and firing, responsibility over the method of payment and provision of employee benefits, and control over the daily activity of the workers, including assignment of work, direct supervision of workers, training and furnishing of materials.

13. At all relevant times, Defendants Katie Kennedy, Mike Kennedy and Daniel Mowery were actual and/or ostensible agents of Defendants Allenberry Resort, Allenberry Resort and Lodging, LLC, Mowery Fisher and Midway Bowl LLC.

14. Defendant Jeromy Kimple is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in Cumberland County located at 1559 Boiling Springs Road, Boiling Springs, PA 17007.

15. At all relevant times, Defendants were "employers" and Ms. Barlow was an "employee" within the meaning of the applicable law.

16. Defendant systematically and willfully violates workers' rights under Title VII and Section 1981.

**Exhaustion of Administrative Remedies**

17. Ms. Barlow timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").

18. Plaintiff's PHRA claims are still pending before PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA claims against Defendants.

19. EEOC issued Ms. Barlow a Notice of Right to Sue Within 90 Days.

20. Ms. Barlow has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

**Jurisdiction and Venue**

21. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under the Title VII and Section 1981.

4

22. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the acts and omissions giving rise to Plaintiff's claims occurred here and Defendants are subject to personal jurisdiction here.

23. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## Facts

24. Ms. Barlow who worked as Assistant General Manager at Defendants' Allenberry Resort from November 4, 2019 until her unlawful termination on December 17, 2020.

25. Defendants hired Ms. Barlow in November 2019 with the understanding that she would be "next in line" for the General Manager position when it became available.

26. On November 1, 2020, Ms. Barlow's coworker, Defendant Jeromy Kimple, referred to Ms. Barlow as "Flabby Tits" in a text message to another colleague who showed the text message to Ms. Barlow.

27. On November 4, 2020, Ms. Barlow informed her immediate supervisor—Tabitha Lauro, General Manager—that she wanted to lodge a formal complaint against Defendant Kimple for hostile work environment/sexual harassment.

28. Ms. Lauro relayed Ms. Barlow's complaint against Defendant Kimple via email to Allenberry management, including Defendants Daniel Mowery, Katie Kennedy and Mike Kennedy, who were acting on behalf of their principals—Defendants Allenberry Resort, Allenberry Resort and Lodging, LLC, Mowery Fisher, and Midway Bowl LLC.

29. Later that day a human resources representative named Whitney took a recorded statement from Ms. Barlow over the telephone regarding her sexual harassment complaint against Defendant Kimple.

30. Whitney informed Ms. Barlow she would "speak to management (Defendants Daniel Mowery, Katie Kennedy, and Mike Kennedy) who would make a decision about the next steps."

31. On November 11, 2020, Whitney texted Ms. Barlow stating "I provided Dan [Mowery] my recommendation and he confirmed today that action has been taken and it has been addressed."

32. Ms. Barlow responded asking for a meeting with management (Defendants Daniel Mowery, Katie Kennedy, and Mike Kennedy).

33. Defendants Daniel Mowery and Katie Kennedy met with Ms. Barlow and told her that they "put something in Kimple's personnel file."

34. On November 30, 2020, Ms. Lauro resigned and therefore the General Manager position, which Defendants had previously guaranteed to Ms. Barlow, became available.

35. However, rather than promote Ms. Barlow to the position as promised, Defendants retaliated against Ms. Barlow for lodging her complaint against Defendant Kimple and declined to promote her to the position.

36. Rather, Defendants discriminated against Ms. Barlow by hiring a less qualified White/Caucasian woman named Bethany Schaffer to fill the position.

37. On December 17, 2020, in further retaliation against Ms. Barlow for her complaint against Defendant Kimple, Defendants fired Ms. Barlow.

38. Ms. Barlow will rely on a broad array of evidence to show a causal connection between her complaint and the adverse employment actions, including the unusually suggestive proximity in time between events, Defendants' change in demeanor toward Ms. Barlow when they became aware of her complaint, and evidence showing similarly situated

persons outside of Ms. Barlow's protected classes who did not complaint about harassment and who were less experienced were nevertheless promoted/retained when Ms. Barlow was denied a promotion and fired.

39. The above are just some examples of the unlawful discrimination, harassment and retaliation that Ms. Barlow suffered by Defendants.

40. Defendants discriminated against Ms. Barlow for opposing and/or complaining about Defendant's unlawful practices under the Title VII and Section 1981.

41. Defendant discriminated against, harassed and retaliated against Ms. Barlow in the terms and conditions of her employment because of race (African American), color (Black), and sex (Female).

42. Defendant subjected Ms. Ms. Barlow to a hostile work environment because of race (African American), color (Black), and sex (Female), and because she complained about Defendants' unlawful conduct.

43. Defendants retaliated against Ms. Barlow because she reported or otherwise opposed Defendants' discriminatory conduct and unlawful wage practices.

44. Plaintiff claims a continuous practice of discrimination, harassment and retaliation and makes all claims herein under the continuing violations doctrine. Defendants exhibited a pattern and practice of not only discrimination, but also retaliation.

45. Plaintiff claims unlawful constructive and/or unlawful actual discharge.

46. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

47. Ms. Barlow continues to suffer severe emotional distress related to the unlawful conduct she experienced by Defendants.

48. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

49. Plaintiff is entitled to reinstatement, liquidated damages, attorneys' fees and costs.

50. Because Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff also claims punitive damages against Defendants.

**Causes of Action**

**Count I**
**Title VII Disparate Treatment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Allenberry Resort, Allenberry Resort and Lodging, LLC, Mowery Fisher, and Midway Bowl LLC**

51. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

52. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

53. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

54. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Ms. Barlow with respect to her compensation, terms, conditions, training and privileges of employment because of her race, color, sex, and retaliation.

55. Defendants subjected Ms. Barlow to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

56. Ms. Barlow's protected characteristics played a determinative factor in Defendants' decisions.

57. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

58. Alternatively, Ms. Barlow's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated their actions against her.

59. Defendants acted with the intent to discriminate.

60. Defendants acted upon a continuing course of conduct.

61. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count II**
**Title VII Hostile Work Environment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Allenberry Resort, Allenberry Resort and Lodging, LLC, Mowery Fisher, and Midway Bowl LLC**

62. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

63. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

64. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

65. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

66. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

67. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." <u>Jensen v. Potter</u>, 435 F.3d 444, 446 (3d Cir. 2006).

68. Here, Defendants' conduct occurred because of Ms. Barlow's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

69. The harassing conduct directly refers to Plaintiff's race, color, sex and retaliation.

70. Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

71. Harassing conduct filled the environment of Plaintiff's work area.

72. Defendants knew that the harassing conduct filled Plaintiff's work environment.

73. Harassing conduct occurred daily.

74. Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

75. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

76. The conduct was both severe and pervasive.

77. The conduct was physically threatening and humiliating.

78. The conduct unreasonably interfered with Plaintiff's work performance.

79. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

80. Defendants provided a futile avenue for complaint.

81. Defendants retaliated against Plaintiff for her complaints.

82. Defendants acted upon a continuing course of conduct.

83. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count III**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**Plaintiff v. Allenberry Resort, Allenberry Resort and Lodging, LLC, Mowery Fisher, and Midway Bowl LLC**

84. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

85. Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

86. The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

87. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

88. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

89. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62

(rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

90. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

91. An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

92. Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

93. Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race, color, sex and retaliation was violated.

94. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

95. There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity. In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such

as the unusually suggestive proximity in time between events, as well as Defendants'
antagonism and change in demeanor toward Plaintiff after Defendants became aware of
Plaintiff's protected activity.

96. Defendants' actions were "materially adverse" because they were serious enough to
discourage a reasonable worker from engaging in protected activity.

97. Defendants acted upon a continuing course of conduct.

98. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her
protected activity and Defendants' actions taken against her, such as the unusually-
suggestive proximity in time between events, as well as Defendants' antagonism and
change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's
protected activity.

99. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages,
including, but not limited to past and future lost wages, pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,
reputational harm, diminishment of career opportunities, and other harm, both tangible
and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following
relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an
award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an
award of pre- and post-judgment interest and court costs as further allowed by law; (4) an
adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title
VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count IV**
**Section 1981 Disparate Treatment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

100.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

101.    Section 1981 prohibits race discrimination in the making and enforcing of

contracts. 42 U.S.C. § 1981.

102.    The Third Circuit has stated that "a wide panoply of adverse employment actions

may be the basis of employment discrimination suits under Title VII of the Civil Rights

Act and 42 U.S.C. § 1981." Clark v. Twp. of Falls, 890 F.2d 611, 618-19 (3d Cir. 1989).

103.    The Third Circuit has treated Section 1981 claims and Title VII claims

interchangeably with respect to adverse employment actions. See, e.g., Barnees v.

Nationwide Mut. Ins. Co., 598 Fed. Appx. 86, 90 (3d Cir. 2015); Storey v. Burns Int'l

Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of

Waco, 764 F.3d 500, 503 (5th Cir. 2014) (a Section 1981 case).

104.    Under Section 1981, both employers and individual employees can be liable for

discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir.

2001) ("Although claims against individual supervisors are not permitted under Title VII,

this court has found individual liability under § 1981 when [the defendants] intentionally

cause an infringement of rights protected by Section 1981,  regardless of whether the

[employer] may also be held liable."); Al-Khazraji v. Saint Francis College, 784 F.2d

505, 518 (3d Cir. 1986) ("employees of a corporation may become personally liable

when they intentionally cause an infringement of rights protected by Section 1981,

regardless of whether the corporation may also be held liable").

105.     Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to her compensation, terms, conditions or privileges of employment.

106.     Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

107.     Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

108.     Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

109.     Defendants acted with the intent to discriminate.

110.     Defendants acted upon a continuing course of conduct.

111.     Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

112.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in

accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6)

an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count V**
**Section 1981 Hostile Work Environment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

113.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

114.    The standards for a hostile work environment claim are identical under Title VII

and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir.

2005) ("Regarding [plaintiff's] hostile work environment claim, the same standard used

under Title VII applies under Section 1981."); Ocasio v. Lehigh Valley Family Health

Center, 92 Fed.Appx. 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights

Act, § 1981 now encompasses hostile work environment  claims, and we apply the same

standards as in a similar Title VII claim.").

115.    While the standards of liability are identical under Title VII and Section 1981,

there is a major difference in the coverage of the two provisions: under Title VII, only

employers can be liable for discrimination in employment, but under Section 1981,

individuals, including other employees, can be liable for racial discrimination against an

employee. See Cardenas, 269 F.3d at 268; Al-Khazarji, 784 F.2d at 518.

116.    Defendants subjected Plaintiff to harassment motivated by Plaintiff's race

characteristics.

117.    Defendants' conduct was not welcomed by Plaintiff.

118.     Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

119.     Plaintiff believed her work environment was hostile or abusive as a result of Defendants' conduct.

120.     As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

121.     Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

122.     Defendants acted upon a continuing course of conduct.

123.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in

accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6)

an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count VI**
**Section 1981 Retaliation**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

124.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

125.     The Supreme Court has held that retaliation claims are cognizable under Section

1981 despite the absence of specific statutory language. CBOCS West, Inc. v.

Humphries, 553 U.S. 442 (2008).

126.     The Third Circuit has indicated that the legal standards for a retaliation claim

under Section 1981 are generally the same as those applicable to a Title VII retaliation

claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("[T]o establish a

prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1)

that he engaged in a protected activity; (2) that he suffered an adverse employment

action; and (3) that there was a causal connection between the protected activity and the

adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36

(D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of

1991 extended § 1981 to the reaches of Title VII.").

127.     The most common activities protected from retaliation under Section 1981 and

Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment

discrimination; (3) testifying, assisting or participating in any manner in an investigation,

proceeding or hearing under Section 1981. <u>See</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), <u>overruled on other grounds</u> by <u>Burlington N. & S.F. Ry. Co. v. White</u>, 126 S. Ct. 2405 (2006); <u>Kachmar v. Sungard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); <u>Aman v. Cort Furniture</u>, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed'"); <u>Griffiths v.</u> <u>CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), <u>overruled on other grounds</u> by <u>Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir. 1995).

128.    Here, Defendants discriminated against Plaintiff because of her protected activity under Section 1981.

129.    Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race was violated.

130.    Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

131.    There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity. In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

132.    Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

133.    Defendants acted upon a continuing course of conduct.

134.    Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

135.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiff is entitled.

## Count VII
## <u>Declaratory Relief Allegations</u>

136.      Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

**137.**      A present and actual controversy exists between Plaintiff and Defendants

concerning their rights and respective duties.

138.      Plaintiff contends Defendants violated her rights as complained of herein.

139.      Plaintiff is informed and believe that Defendants deny these allegations.

140.      Declaratory relief is therefore necessary and appropriate.

**WHEREFORE**, Plaintiff seeks a judicial declaration that Defendants have violated her

rights as complained of herein.

## Count VIII
## <u>Injunctive Relief Allegations</u>

141.      Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

142.      No plain, adequate, or complete remedy at law is available to Plaintiff to redress

the wrongs addressed herein.

143.      If this Court does not grant the injunctive relief sought, Plaintiff will be

irreparably harmed.

**WHEREFORE**, Plaintiff seeks an order enjoining Defendants from engaging in the

unlawful acts complained of herein and reinstating her to her position.

## Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury on all issues raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
Dated: <u>March 30, 2021</u>                    *Attorneys for Plaintiff, Tineshia Barlow*